Alright, let's go to the second session. Case number 316-0329, Judith Mottle Kerr Trust v. M. Kerr, Trustee, et al. Anthony's Cross Appellants v. David Bisto v. Loretta Holm, et al. Appellants Cross Ambulees by Christopher Carroll Good morning, Your Honors. My name is Christopher S. Carroll. May it please the Court, Counsel, I represent the appellants and cross appellees Loretta Holm, Adam Holm, Daniel Holm, and Nicholas Holm. This is an appeal for an order granting summary judgment in favor of the plaintiffs who are the appellees and cross appellants. If the Court entered summary judgment in favor of the cross appellants and appellees ordering the appellants to if the Court will give me a second share the cost to reestablish a boundary line based upon a survey share equally to mine, amend, and stake a boundary line according to a survey and to share in the cost of erecting and maintaining a division fence which will be a two-stringed wire fence. The history of this matter is that the plaintiffs who are the appellees and cross appellants filed a two-count complaint count one in declaratory relief count two in adjunctive relief against the appellants. The dispute arose from the fact that they are adjoining property owners, neighbors on a property. The dispute further arises over the issue of whether or not there was a historic fence which was described by the appellees and the cross appellants as a two-string barbed wire fence. According to the appellees and cross appellants that fence was erected in 1974. However, this was disputed by the appellants and cross appellants. I'm sorry, I'm stumbling over this because there is cross appeals. But anyway, the appellants and cross appellates filed a motion for summary judgment arguing that the relief sought by the cross appellants and appellates was barred by the Fence Act, specifically Section 4 of the Fence Act. Now, in its order granting summary judgment, the court specifically found that Section 3 of the Fence Act applied and the court specifically stated pursuant to this court's authority under Section 3 of the Fence Act, the parties are ordered to share legally the cost to reestablish the boundary line based upon the agreed-upon Morrison survey. Section 3 of the Fence Act says, in turn, when persons have lands adjoining, each of them shall make and maintain a just proportion of the division fence between them. There's no language in Section 3 about reestablishing a boundary line and sharing in such costs. The Section 3 of the Fence Act talks about fences. It doesn't talk about boundary lines because, after all, you can have a boundary line without a fence. That statute does not regulate boundary lines. It regulates costs pertaining to fences. So the court held that it had authority under Section 3 of the statute to order this relief and the clear wording of the statute does not support that. Similarly, that the parties shall share equally in the cost to monument and stakes that boundary line according to the survey. Again, Section 3 of the Fence Act doesn't talk about monumenting or staking. There's no language in Section 3 of the Fence Act to that effect. Finally, the court ordered that the parties should share equally in the cost of erecting and maintaining the division fence, which will be a two-strand wire fence. The... Was this a division fence or not? Yes, it said that in the order. Now I'm asking you. Yes, sir. You're saying 3 doesn't apply? It doesn't apply to... It does apply to a division fence. Yes, I agree. Okay. But it doesn't... You have a... Excuse me. I'm sorry. You have a boundary line survey that you've agreed upon as the Morrison Survey. Correct. That that is the boundary dividing the two properties, am I correct? Correct. And so if you put a fence there, is that not a division fence? We say no because this is governed by Section 4. In any county with a population of less than a million, if any person wishes to enclose his land located in that county, then he can tax his neighbor with the cost of paying for the building. The language pay for the building appears in Section 4. It doesn't appear in Section 3. So Section 3 really confers no authority on the court, only Section 4. And the condition preceded to the application of Section 4 is that the person must enclose his land. So for the purposes of this case, our position is that a division fence is a fence which encloses land because Section 4 applies. There's nothing in Section 3 that affords this relief. There's no language in Section 3. So what would your opponents have to do to fall under Section 4? Enclose their land. Oh, you mean all other three sides? Yes, sir. Yes, sir. Okay. All right. Because it's only in that statute in Section 4 that the language pay for the building appears. That language does not appear in Section 3. So as a basic issue of statutory construction, Section 3 did not provide the basis for relief that the court granted. We would also like to point out that since this is an appeal from summary judgment and construction of a statute review is denial. Mr. Nussbaum? I'm sorry. Sorry. Before you go any further, I'd like to go back to Section 3. Yes, ma'am. And ask you what it means when it says, each of them shall make and maintain a just proportion of the division fence. Well. Does make not mean build? It could. It could. But the more specific language is pay for the building of. It's significant that this legislature, the Illinois General Assembly, did not use the words pay for the building of in Section 3. So because of that, the tax and the cost to pay for the building of a fence just is inappropriate. It's not warranted. It doesn't provide the relief that the court granted. So if the court had rephrased its order and ordered your clients to make and maintain. Well, we would have still argued Section 4 controls. But it's more specific than Section 3. It seems to me that you have a problem with Section 4 because, as you mentioned, it deals with enclosing. And what it's saying is that whoever owns the other side of the boundary, of each of the boundaries, will have to pay for the maintenance of the division fence for that half. So you may be dealing with three or possibly four other owners. Possible. But those aren't the facts of this case. No, the facts of this case seem to put you in Section 3. Well, respectfully disagree, Your Honor. The facts of this case put us within Section 4. Because the language in Section 4 is so much more specific than the language in Section 3. Plus, shell has often been interpreted as directory rather than mandatory. When two or more persons have lands adjoining, each of them shall make or maintain a just proportion of the division fence. Paying for the building is definitely mandatory language, whereas shall make or maintain could well be aspirational, for want of a better word. Aspirational? Well, directory rather than mandatory. The other issue here is the financial summary judgment based on the record created by the appellees and cross-appellants who benefited. They got the award of summary judgment. In the affidavits filed by the cross-appellant and appellee, Mr. Kerr, he specifically called the Holloms liars. As we know, credibility is not a summary judgment standard. When you inject credibility into a case, you foreclose summary judgment, which is what Mr. Kerr did. And also, we have again regarding the issue of summary judgment, they claim that the Holloms tore down a fence which the Holloms denied. The Holloms denied there was ever any fence to tear down. And in their brief, the cross-appellant's appellees reproduced verbatim testimony by Mr. Kerr at hearing where he was specifically asked, did you see who tore down the fence? No, I did not. And they haven't produced any other witnesses. Everything was based on surmise and conjecture. So based upon the record they created, summary judgment is not appropriate here. So what are the issues for trial? The issues for trial are whether the fence existed in the first place and, secondly, whether the Holloms tore it down, and then, thirdly, whether under Section 4 whether he's enclosed his land. When you agreed to the survey, did you agree to the findings of the surveyors beyond the boundary? No. No. The parties stipulated to the Morrison survey insofar as fixing the boundary was concerned. And, by the way, the cross-appellant and the appellee are expensing time on account one of their complaint, boundary by acquiescence. That's noted by virtue of the stipulation. There's no issue of boundary by acquiescence here. The boundaries have been fixed by the parties' stipulation. I'll ask you one more question about the survey. Both of the surveyors reported that the fence was degraded. Do you know the extent to which it was degraded? What did they mean by that? I don't because their testimony was somewhat vague. For one thing, one surveyor stated that he did not note all of the fence posts because that would have been too much work. Secondly, it appears that this fence was built in 1974 according to the cross-appellant appellees. That would make it 40 years old. According to Mr. Kerr's affidavit, the area was overgrown with vegetation and hard to access, and he didn't see who tore it down. He's just assuming that it was the Hollands, his neighbors who needed tests. When in the record is there anything that says this degraded fence was on the boundary? On the boundary? I don't see that on the record. But that is what they're claiming. They're claiming the eastern two-thirds fence, which is more on the south, is the historic fence line. So you would say that would be an issue in trial to determine? Yes, Your Honor. Whether they are synonymous. Yes, Your Honor. And if they are not, how does that affect your client? Now, we dispute that there was ever, at least the Hollands, Adam and Daniel, dispute that there was ever an historic fence there because they say the only fence ever erected was one on the driveway. And the issue is, repeatedly, the eastern two-thirds fence, which, alleged fence, which extends from the driveway to Winter Bottom Road. Both parties own property that extends up to Winter Bottom Road. At least that's my understanding of their position and of the record. So that's a factual issue, whether there is ever an existing fence and if so, when. That's, yes, Your Honor. Wouldn't the Morrison Boundary and the Morrison Survey take care of that one way or another? Thanks, sir. Not the survey, but the Morrison Survey. Would that not take care of that issue? Yes. I mean, we've stipulated the boundaries. The issue is the historic fence and who tore it down or if anyone tore it down and the costs of monumenting and staking the boundary. Again, there's no authority within the Fence Act for restoring a boundary line because the Fence Act applies to fences. And there are many boundary lines that are not fenced off. And yet the court awarded significant monetary relief and taxed significant costs upon the Holland family based upon the Fence Act. Counsel has two minutes. Your view is that, maybe I'm misunderstanding, that in terms of assessing costs to use under three, making and maintaining a just proportion of the fence, I would have to, if I'm a landowner, totally enclose all of my property. In a county of less than one million. If you're going to charge me with this. We take judicial notice. Grundy isn't over me. Thank you, Your Honor. Okay, so let's not go down those ideal paths. Thank you. Let's talk about, so that's the only time the Fence Act applies? No, the only time Section 4 of the Fence Act applies. There are other sections of the Fence Act that apply that provide extensive procedural requirements. Of course there are, but I'm talking about fencing my property. Yes, Your Honor. Okay. And the only time I can go to my neighbor and say, you need to make and maintain a just proportion of the fence, is when I have made a decision to enclose my entire property. If you're going to make me pay for half of it, Your Honor. That's your position. Our position. And you think the Fence Act, as that is the operative term, I don't need to talk about the Fence Act until I've made that decision. Correct, Your Honor. That's our position, Your Honor. Do you have any law for that? Well, we rely upon the language of the Fence Act itself and the statutes we've cited regarding statutory interpretation. So any fence-lying law dispute that we might find in some reported cases, we'll have to imply that the party seeking to get contribution to make and maintain a fence was fencing his entire property or her entire property. That's our position, Your Honor. Thank you. Thank you very much. Thank you, Your Honor. If it may please the Court, my name is Dave Goosdall. I'm the attorney for the Judith Kerr Model Trust and Alexander Kerr Individually, the appellees and cross-appellants herein. I guess what I would like to do is initially begin on some of the comments that were presented here today and respond to Mr. Carroll's comments about the Fence Act and the like. First and foremost, it is our position that Section 3 of the Fence Act is applicable here. As he stated earlier, Section 3 states, when two or more persons have lands adjoining each of them shall make and maintain a just portion of the division fence between them. Second, with regards to whether or not there's a material issue of fact, and this will all tie together, on the July 15th motion for summary judgment hearing, the judge ordered that motion to summary judgment was denied except for the issue as to when the removal of the historical two-thirds of the eastern portion of the boundary fence was removed. The plaintiffs therein, the Kerrs, presented the Court four primary affidavits, the first of Alexander Kerr, the second of Judith Kerr, the third of Kevin Donovan, and the fourth of Josh Schroeder. Both Kevin and Josh Schroeder were the engineers at Spaceco who retraced the historical boundary line. Their affidavits are particularly important in that what they stated in their affidavits is that when they went out to do their field work in August of 2014, there was a two-strand barbed wire fence on the eastern portion of the farm, of the ground, on the boundary. In fact, they attached a photograph to their affidavit showing the easternmost wind post and a picture of the barbed wire. Why that's important is that we conclude that sometime after August 14, the two-strand barbed wire fence was removed. Yes, was it dilapidated? You're right. Because the testimony of Mr. and Mrs. Kerr was that the fence was installed, the historical two-strand boundary line fence, sometime after 1972 or in the early 70s. It stretched from the eastern part of the property on Winter Bottom Road and went to the eastern. So you've got some evidence, right, that says the fence existed. Which we presented to the court when we had the hearings on the partial motion for summary judgments and the cross motions based on his July 15 order. He narrowed the issue down. He said, yes, we have a boundary by acquiescence. But we also then wanted to know is when was the fence removed? And that's what we went back to court on. Well, the boundary by acquiescence is out. Completely gone. So what you're saying is you had that affidavit for that count. We had the affidavit and they also stated in the affidavit that they demarked or they showed on their survey, Spaceco did, the historical boundary line and they marked on the survey the historical eastern two-thirds of the fence. Furthermore, the Morrison survey marked on his survey the historical eastern two-thirds of the fence. They showed the wooden posts on their fence. They showed a portion of the bottom line. I have a question. They could show them in their garden. I don't care where the posts are. But what do you have to say where the posts are in terms of the agreed upon boundary? Well, what we have are the posts are the agreed upon boundary. The Morrison survey, what he did is he retraced the historical boundary line and he drew the division fence as being the center of the historical boundary line. He shows the wooden posts and he ties that into the legal description. And so that's what we acquiesced that the two parties agreed to when we adopted the Morrison survey. I was going to use the word acquiesce. I'd get off of that. You're confusing count one for me. Sure. When you use that word. But agreed. We agreed to the Morrison survey which showed on the survey the wooden posts and the location of the eastern two-thirds of the wire strand fence, which for the record I believe the Morrison survey was done in 2011 before litigation proceeded. The Space Coast survey was done in August the 14th, and what that did is it compared the Morrison survey with their prior survey from the Claussen Survey Company. Okay, so let's just, you have agreed that there is a, the Morrison survey establishes the boundary between both properties. And the Morrison survey indicates where the fence is relative to the moon. Yep, they could also show where the moon is. Do you have anything that says that quote historic fence is on that boundary? The survey from Space Coast does say that. Oh no, the Morrison. You didn't agree on Space Coast. No, Space Coast was intended when we did the litigation to show the difference between the Morrison survey and the Claussen survey. Once you agree on the Morrison, have you taken that out of contention? The historic boundary line? I don't think we take it out of contention. The reason we don't take it out of contention is that the way I read the Morrison survey it demarks the historical fence line as being the boundary line. That's the way you read it? That's the way I read it. Yeah, well. That was our argument. Do you have any surveyors saying that? We have the testimony of Morrison himself at one of the earlier hearings. He says the historic fence lies on my survey. He said he went and he retraced the survey boundaries. He went and I think his testimony was, I kicked dirt, I cleaned the shovels, I moved stuff around, I looked for the historical boundary line. That was his testimony. And furthermore, what I would argue is the survey that was ordered by the defendants here, the Claussen survey, which was supposed to support their position, matched the fence line up with the Morrison survey. And you don't see any disputed facts in everything you say? I don't see any disputed facts as to the location of the fence line. In particular, when we used the Space Coast survey to tie everything together. Well, what relief are you asking for if it were, or do you think it's appropriate if you find the, is it Holloms? Holloms. If the Holloms went out there in the dark of night and took out that fence. Well, what we're asking for in our cross appeal is that if Section 3 applies, then logically Section 15 of the Act applies, which in the cross appeal what Section 15 states, if I can turn to it, is that if somebody removes the fence inappropriately, the expenses would be charged against them. And what we had here is. Well, and how much do you think that would be? I would tell you that. What's the just proportion? The Holloms would be liable to pay the curbs. What's the just proportion? I would think in this case, since it runs the same distance from the east to the west or the west to the east, it would be a 50-50 split if it's done proportionately. But I think if Section 15 is applicable, the charge should be against the Holloms. How do you read Section 15 to get there? I'll read it verbatim. Is it verbatim in anybody's briefs? Section 15 provides, if any such fence shall be removed without such notice, the party removing the same shall pay to the party injured all such damages as he may thereby sustain to be recovered with the cost of the suit. And what damages could he sustain by taking out your half of that fence? By taking out our half of the fence or the entire fence? No, no. It's not the whole fence, but only half of it's theirs, half of it's yours. So what damages would you incur if they took out the whole fence? If they took out the whole fence, we would be responsible if only Section 3 was applicable for pay to handle it. No, Section 15 says that. No, I think what Section 15 says is that the party who removes the fence is responsible for the replacement of 100% of the fence. How do you get there? I think it relates down to if any such fence shall be removed without such notice, the party removing the same shall pay to the party injured. So they would have to pick up the KERS 50% and the NIF 50%. Obviously, they could be enjoined to put back half of their fence, their own fence. But I think what Section 15 is saying is that the injured party, which in this case if the wrong flag was found by the Holoms, they would be responsible for the KERS costs in addition. So they would have to pick up their 50% and the KERS 50%. That's how you get to the 100%. That's how you get to the 100%. So in other words, the damages to the KERS is half of the total cost of replacing the fence. Yep, they're half. See, it was a little confusing there when you targeted. Sure, I jumped the gun and went to 100%. Right. So your cross-appeal is related to that issue, your claim that the Holoms should have to pay everything. Yes, our cross-appeal basically says that subsequent to filing the lawsuit, subsequent to August of 2015, or excuse me, 14, which is consistent with the four main affidavits that I mentioned earlier, is that you go further east on that property, it's hard to get to, it's not readily accessible to the general public. That we had photographs of a portion of the fence at one point dated August of 14. That fence was removed. The eastern two-thirds were removed. And as the trial court said in its order of May 26, no contrary evidence was produced by the defendants therein. They just state in their affidavits, all they're stating is, hey, look, we don't know if any new fence was erected. And furthermore, their affidavits never state any time of element as to when they took residency. They just say, no fence was built subsequent to our residency. We don't know when they started to reside there, where if you go back to the Kerr affidavits, those clearly state that during the 70s the fence was built from one end to the other. But they come back and they say, look, during our residency, nothing was built. However, Daniel Holm testified in one of the preliminary injunction hearings that he didn't begin residing on the property, his grandmother's property, until shortly after his grandfather's death, which was in 09 or 11. So we have this time frame. They don't necessarily mistake the facts, but they cleverly omit certain facts. If they came back and said, look, we started residing on the property in 1970 and we never saw the fence, then maybe you have a material issue. But in this case, if we didn't start residing on the property until 2009, well, that exempts 1972 to 2009. What was the condition of the fence? The condition of the fence on the western one-third, they did improve it. That's between the two drivers. Both improved the property. As you go further east and if you look at the affidavits of the two surveyors, there are parts that was too hard for them to get to. It was two-strand wire fence with old, big posts. I'm sure somewhere in the middle some of it fell down and everything like that, but the importance of the division fence was that is where everybody put their monuments the surveyors did to everybody to go reestablish the boundary line. The wooden posts did establish some of that old line and there was barbed wire going through. We definitely did not go that 1,300 feet plus from one end to the other to check every strand because it does get pretty heavy in there. When Section 3 says make and maintain, I would be arguing that you're maintaining it and that we're replacing a fence or improving a fence or bring it back up, a fence that was removed, so that we have a completed fence, one from the west end to the east end. Section 3 says that if you're doing that, if you're correcting the fence to make it whole, that the party shall pay in just proportion. It does, but I think Section 15 is meant or intended as a penalty that says if one party unjustly removes the boundary line fence, then that party is going to be responsible for, in this case, the curves expenses. If you remove a broken down fence, then it seems to me that you're getting back into 3. It sounds like the trial court said that Section 3 controls. The trial court definitely said that. It answers all of the questions that were before the court. So he's rejecting 15. We did not frankly address 15 at the trial court level. So you're saying you need to have a trial on that then? Yeah, if we wish to proceed on 15, then yes. I don't think a posting council disagrees with you, right? No. I mean, I'll have to ask a posting council. But, I mean, in this scenario, I mean, you know, the issue becomes whether, I mean, our first and foremost argument is that we do agree with the court order. Well, you agree with a section of the court order as to the applicability of the Fence Act, which the posting council disagrees with, in terms of Section 3. And so what you're saying is what's remaining on the plate to go to trial and get some evidence for it. It would be the application of Section 15. 15. Okay. I just want to be honest with you. The briefs at times are difficult to comprehend. Sure. And so kind of through a long and about, I guess the way we got to the green on the Morrison survey is talking us all out. Well, again, it was a long case, and, you know, we're talking about a statute that goes back to 1858, which so. Which, in and of itself, was an adoption by the common law of the state. And they could have gone the other way, you know. Sure. In the eastern parts of this nation, they'd go the other way. Yep. Council has one minute. No other questions? We just. Thank you. Okay. Thank you. I'd like to respond briefly to Council's argument regarding the applicability of Section 15. The essential problem with this argument is this is on appeal from an order granting summary judgment, which means that in order for the court to have granted him the relief, there must be no material issue of fact. Now, in hearing, and this is reproduced in the brief filed on behalf of the Kerrs, Mr. Kerr was asked, you didn't personally see who removed it, referring to the historic, the alleged historic fence. And he said, I did not. So how does Council get to summary judgment based on that record? There are no other witnesses he's identified who personally observed that Hollings allegedly removed this fence, which, number one, they claim they did not know about, and number two, they claim that probably did not exist. Where does he get, I'm sorry. No, go ahead. Where does he get the summary judgment on that record, on at least the applicability of Section 15? The Hollings are just the usual suspects that Mr. Kerr is rounding up. He claims that the fence was not there when he observed it at some point, that it was there when the surveyors observed it, but he didn't see who tore it down, and he really doesn't know. He just thinks they're the guilty parties. And on that basis, he gets summary judgment against them and he gets damages under Section 15. That's not a summary judgment case. That's a trial issue. And there are all the other issues regarding Section 15 that this Court has pointed out. The Court did not rely on Section 15 in granting this relief. It relied on Section 3. Section 15, as we point out in the report I read, speaks about responsibility for removing an entire fence. It doesn't talk about responsibility for removing a portion of a fence. And at all times, the fencing issue here is a portion, the eastern two-thirds, running from the driveway to Winter Bottom Road. So I really don't see how Section 15 applies here on any grounds. But if it does, it certainly doesn't give counsel a right to summary judgment based on the record created in the court below. And that would be the extent of my comments. I'll just reserve the remainder of my time for questions. Thank you. Thank you. All I want to point out with respect to the issue of whether or not there is a material issue in fact, we presented four affidavits. Mr. Kerr was actually at direct examination when the cases were consolidated in the Boyk-Scout case. And as the court found, the trial court found in his May 26th order, was that the defendant Holmes presented no contrary evidence to what was presented by the plaintiffs therein. The plaintiffs never presented any inconsistent facts. And so beyond that, that would be my comments at this point. Thank you, unless there's any further questions. Thank you. Thank you. Thank you both for your argument today. I'm going to leave this matter under advisement of defense with a written opinion within a short day. And I'll take a short recess for a moment. Your Honor, this court is adjourned at recess.